NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RAY R., | ) | |
| | ) | Supreme Court No. S-16311 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-00365 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1606 – December 28, 2016 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: J. Adam Bartlett, Anchorage, for Appellant. David T. Jones, Senior Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee. Paul F. McDermott, Assistant Public Advocate, and Richard K. Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Stowers, Chief Justice, Winfree, Maassen, and Bolger, Justices. [Carney, Justice, not participating.]

---

\*     Entered under Alaska Appellate Rule 214.

# I. INTRODUCTION

The superior court terminated a father's parental rights to his daughter, finding that the father had abandoned her and placed her in substantial risk of harm due to his heroin addiction. The father now argues that the superior court erred when it terminated his rights because he should have been given more time to remedy his substance abuse issues. Because the superior court's finding that the father had failed to remedy his substance abuse was not clearly erroneous, we affirm the termination of his parental rights.

# II. FACTS AND PROCEEDINGS

Ray R. and Celia K. have a daughter, Amy, who was born in July 2008.[1] Celia and Amy are both members of the King Island Native Community, which makes Amy an Indian child under the Indian Child Welfare Act (ICWA).[2] Celia also has two sons from a previous relationship who lived with her during times relevant to these proceedings. This appeal concerns the termination of Ray's parental rights of his daughter Amy.

Both Ray and Celia struggled with heroin addiction, and there were occasional incidents of domestic violence with both parents behaving aggressively. The family was the subject of 14 reports and seven investigations by the Department of Health and Social Services, Office of Children's Services (OCS). Then, after two

---

[1]    We use pseudonyms to protect the family's privacy.

[2]    *See* 25 U.S.C. § 1903(4) (2012).

incidents in July 2014 — Celia stabbing Ray and one of Celia's sons needing to have an eye removed following an accident with a damaged frisbee — OCS assumed emergency custody of Celia's sons.

Amy, age six at the time, initially stayed with Ray, but Celia expressed concern to OCS about Ray's substance abuse and reported that when she visited Amy and Ray at a local park a few days after the sons were removed, Amy "appeared dirty and smelled like she hadn't showered for days." On August 15, OCS assumed emergency custody of Amy and filed an Emergency Petition for Adjudication of Child in Need of Aid (CINA) and for Temporary Custody. Amy was then placed with a close family friend who qualified as a preferred placement under ICWA.

An OCS caseworker identified substance abuse as the underlying concern about Ray's ability to care for Amy. While Ray initially denied using heroin, he eventually began talking with OCS about his plans to get clean. But he refused to complete the urinalysis tests required by his case plan, and he missed an appointment for a substance abuse assessment that OCS set up for him. Ray then entered detox but left early, and he then failed to follow through on another referral for assessment. OCS frequently lost contact with Ray despite calling him at least monthly and sometimes checking his Facebook page "to make sure he was alive." During this period, Ray was "using heroin regularly" and "stealing to . . . feed his habit." At times he was homeless, and at other times he was incarcerated.

Ray's substance abuse damaged his relationship with Amy. OCS initially scheduled weekly visits, but Ray only occasionally showed up. OCS estimated that his longest absence between visits was a year, and the foster mother confirmed that Ray went over a year without seeing Amy.

Because Ray failed to make progress on his case plan, Amy's permanency plan was changed from reunification to adoption. In November 2015 OCS filed a

petition for termination of parental rights against Ray and Celia[3] on the grounds of abandonment and substance abuse.[4] Ray was incarcerated during the time leading up to the termination trial, but he still managed to make some progress on his case plan, including taking parenting classes and attending Narcotics Anonymous (NA) meetings in jail. He also did a substance abuse assessment, but results were not available by trial. OCS arranged one visit at the jail, but neither Ray nor Amy requested further visits before trial.

A termination trial was held in April 2016. OCS emphasized that Ray's substance abuse affected his parenting because someone using heroin "on a daily basis . . . can't offer a safe environment" to a child. Ray testified that he was willing to be a parent to Amy, but currently unable due to substance abuse and incarceration. He acknowledged that OCS had given him "chances" to get clean, but defended himself with the statement that "heroin is just a hell of a drug." Ray maintained that his substance abuse and lack of contact with Amy did not make him an unfit parent.

In order to terminate parental rights to an Indian child, the superior court must make five factual findings.[5] Here, the superior court found by clear and convincing evidence that (1) Amy was a child in need of aid because of parental abandonment and substance abuse;[6] (2) Ray had failed to remedy the conduct or conditions placing Amy

---

[3] Celia voluntarily relinquished her parental rights before trial.

[4] AS 47.10.011(1) and (10).

[5] *See, e.g.*, *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1264 (Alaska 2014).

[6] *See* CINA Rule 18(c)(1)(A); AS 47.10.088(a)(1); AS 47.10.011(1) and (10).

in need of aid;[7] and (3) OCS had made active efforts to reunify the family.[8] The superior court also found beyond a reasonable doubt that (4) returning Amy to Ray's care would place her at substantial risk of harm[9] and (5) termination of Ray's parental rights would be in Amy's best interests.[10] The court therefore granted OCS's petition to terminate Ray's parental rights.

Ray now appeals.

## III. DISCUSSION

Ray makes only a single argument on appeal: that he should have been given more time to remedy his substance abuse before the superior court terminated his parental rights. We read this as a challenge to the superior court's factual finding that Ray failed to remedy the conduct or conditions placing Amy in need of aid.[11] We review factual findings for clear error.[12] Factual findings are clearly erroneous "only when a review of the entire record leaves us 'with a definite and firm conviction that the superior court has made a mistake.' "[13]

---

[7] *See* CINA Rule 18(c)(1)(A); AS 47.10.088(a)(2).

[8] *See* 25 U.S.C. § 1912(d); CINA Rule 18(c)(2)(B).

[9] *See* 25 U.S.C. § 1912(f); CINA Rule 18(c)(4).

[10] *See* CINA Rule 18(c)(3). While this fact only needs to be found to a preponderance of the evidence, the superior court found that it was established beyond a reasonable doubt. *See id.*

[11] *See* CINA Rule 18(c)(1)(A); AS 47.10.088(a)(2).

[12] *See, e.g.*, *Marcia V. v. State, Office of Children's Servs.*, 201 P.3d 496, 502 (Alaska 2009).

[13] *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 774 (Alaska 2012) (quoting *S.H. v. State, Dep't of Health & Soc. Servs.,*
(continued...)

In order to terminate parental rights, a court must find by clear and convincing evidence that the parent has failed to remedy the "conduct or conditions" placing the child in need of aid.[14] The superior court made that finding here, concluding that Ray had not remedied his substance abuse or abandonment of Amy and that Ray's substance abuse was "almost completely untreated."

Ray acknowledges that he had not successfully completed treatment for his addiction at the time of trial, but he points to his "steady, but slow, progress," from denying the problem to expressing a desire for treatment to briefly entering detox and finally to "work[ing] his case plan in earnest" while incarcerated just before trial. Ray therefore argues that he should have been "given more time for substance abuse treatment." We disagree.

We have stated that "[f]indings of continued substance abuse and refusal to undergo treatment are sufficient to satisfy failure to remedy."[15] We have also upheld termination of parental rights even when some progress has been made toward treatment goals.[16] In one analogous case, we found that a mother's "stated intention to complete

---

[13]     (...continued)
*Div. of Family & Youth Servs.*, 42 P.3d 1119, 1122 (Alaska 2002)).

[14]     CINA Rule 18(c)(1)(A); AS 47.10.088(a)(2).

[15]     *Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1268 (Alaska 2014).

[16]     *See, e.g., Amy M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 320 P.3d 253, 259 (Alaska 2013); *see also T.F. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 26 P.3d 1089, 1093 (Alaska 2001) (acknowledging a mother's "seemingly sincere efforts toward recovery [from her substance abuse] in the weeks before [the termination] trial," but nonetheless affirming the superior court's conclusion that she failed to remedy her conduct in a reasonable amount of time).

treatment, her sobriety while incarcerated, and her attendance at NA meetings" did not require us to reverse a superior court's failure to remedy finding when those developments were only "recent changes" made shortly before the termination trial.[17] In affirming the superior court's finding in that case, we relied specifically on the mother's "long history of substance abuse" and the fact that she had otherwise failed to take the steps required by her case plan.[18]

In this case Ray similarly has a long history of substance abuse and has failed to become fully compliant with his case plan. As the superior court noted, Ray failed to remedy his substance abuse despite "substantial" efforts by OCS "to provide remedial services and rehabilitative programs." And while Ray asserts that jail provides him "with a structured drug-free environment where he can focus on breaking his addiction," Ray spent time in jail both before OCS took custody of Amy and during the period in which OCS was working with him on his substance abuse issues; these previous periods of incarceration did not cure Ray of his addiction.

The superior court properly considered both Ray's history of substance abuse and his present conduct in determining that Ray had failed to remedy the conduct placing Amy at risk of harm. We conclude that the superior court's finding was not clearly erroneous. Because Ray does not challenge the superior court's other factual findings required for termination of parental rights, we do not review them on appeal.[19]

---

[17]    *Amy M.*, 320 P.3d at 259.

[18]    *Id.* at 254, 259.

[19]    *See, e.g.*, *Danielle A. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 215 P.3d 349, 353 n.27 (Alaska 2009); *see also Int'l Seafoods of Alaska, Inc. v. Bissonette*, 146 P.3d 561, 569 (Alaska 2006) ("An issue raised in the points on appeal but not adequately briefed is considered abandoned.").

But we note that the same facts we set forth earlier in this opinion would support those findings as well.

## IV.    CONCLUSION

For the reasons explained above, we AFFIRM the superior court's termination of Ray's parental rights.